# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DESHAWN GARDNER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 19-cv-17-SMY |
| | ) |
| WEXFORD HEALTH SOURCE, | ) |
| JOHN BALDWIN, | ) |
| STEPHEN DUNKIN, | ) |
| JOHN COE, | ) |
| SHERRY COLLINS, | ) |
| JAMEY GARRETT, | ) |
| JANE DOE, | ) |
| and JOHN DOE, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Deshawn Gardner, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Lawrence Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Plaintiff alleges Defendants were deliberately indifferent to his knee pain. He seeks monetary damages.

This case is now before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner Complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a Complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

1

## The Complaint

Plaintiff makes the following allegations in his Complaint: While stretching in his cell, Plaintiff felt his left knee pop and begin to swell and stiffen with pain. Since the initial injury, Plaintiff's knee continues to pop out of place and cause Plaintiff pain. (Doc. 1, pp. 16-17).

Plaintiff first saw Defendant Sherry Collins on April 23, 2016 for his knee pain. (*Id*. at p. 16). Plaintiff explained his injury to Collins and reported his pain as a "10" on a scale of 1-10. (*Id.* at p. 17). Although Plaintiff requested an x-ray or MRI, Collins refused the tests and also refused to refer Plaintiff to a doctor or provide him with any pain medication. (*Id.* at p. 18-19). Collins eventually referred Plaintiff to Defendant Dr. John Coe after Plaintiff again reported pain on May 21, 2016. (*Id* at p. 20).

Plaintiff saw Dr. Coe on May 24, 2016 for his knee pain. (Doc. 1, p. 21). Although Dr. Coe indicated he believed something was torn in Plaintiff's knee, he would not send Plaintiff for an MRI because it was "an old knee injury". (*Id.*). Dr. Coe informed Plaintiff that he did not report the injury in a timely manner and the knee was healing itself. (*Id*. at p. 22). Dr. Coe then prescribed Plaintiff a knee sleeve to stabilize the knee and muscle cream but would not prescribe pain medication. (*Id.*). Plaintiff never received the knee sleeve. (*Id.*).

After meeting with Dr. Coe, Plaintiff wrote a grievance complaining about the care he received. Defendant Stephen Dunkin denied the grievance. (Doc. 1, p. 24). Jamey Garrett, Jane/John Doe grievance officer, and John Baldwin also denied his grievances.

Plaintiff also spoke with Dunkin when he made rounds through segregation. (*Id*.). Plaintiff complained that he never received the knee sleeve and the muscle cream was not working. (*Id*.). Dunkin promised to speak with Coe about a referral to an outside specialist and later informed

Plaintiff that he was still awaiting a response. (*Id*. at p. 25). Plaintiff never heard back from Dunkin.

On July 29, 2016, while being escorted to the yard, Plaintiff's knee locked up and he could not walk. (Doc. 1, p. 25). He was again taken to Dr. Coe who stated there was nothing wrong with Plaintiff, despite Plaintiff complaining that he was in pain. (*Id*. at pp. 26-27). In response to Dr. Coe's actions, Plaintiff declared a hunger strike. (*Id*. at p. 28). During the hunger strike, Plaintiff was informed on two occasions that he was being taken for an x-ray of is knee only to learn upon arrival at the healthcare unit that he was merely getting vitals pursuant to the hunger strike protocol. (*Id*. at p. 29-31).

Plaintiff was finally seen by Dr. Matticks, the new healthcare director, on August 5, 2016. (Doc. 1, p. 30-31). Dr. Matticks suspected a tear of the meniscal and ordered an x-ray and MRI. (*Id*. at p. 31). The x-ray revealed that Plaintiff had an acute fracture of the patella. (*Id*. at p. 32). He was prescribed an ace wrap, crutches, and pain medication. (*Id*.). The request for an MRI was approved by collegial review and he received an MRI on August 9, 2016. (*Id*. at p. 33). The MRI confirmed a facture of Plaintiff's patella as well as a tear of the meniscus, moderate knee joint effusion, and a ruptured Baker cyst. (*Id* at p. 33). Plaintiff was referred to a specialist who confirmed on September 8, 2016 that the tear was causing his knee to lock up. (*Id*. at p. 34). Surgery was recommended and Plaintiff received surgery to remove the meniscus fragment that was causing his locked knee on October 31, 2016. (*Id*. at pp. 35-36).

The denial of care by Collins and Dr. Coe was a result of cost saving policies instituted by Wexford Health Sources. (Doc. 1, p. 45). John Baldwin, as the head of IDOC, was aware of these policies and turned a blind to the improper care being provided. (*Id*.at p. 40). In addition to his

Eighth Amendment claim of deliberate indifference, Plaintiff also alleges that Defendants actions in denying him proper care violated his due process rights under the Fourteenth Amendment.

**Discussion**

Based on the allegations in the Complaint, the Court finds it convenient to divide the *pro se* action into the following Counts:

> **Count 1:** John Coe, Sherry Collins, John Baldwin, Stephen Dunkin, Jamey Garrett, Jane/John Doe grievance officer were deliberately indifferent in the treatment of Plaintiff's knee pain in violation of the Eighth Amendment.
>
> **Count 2:** Wexford Health Sources, Inc. and John Baldwin were deliberately indifferent in maintaining cost reduction policies that led to Plaintiff not receiving timely, appropriate care in violation of the Eighth Amendment.
>
> **Count 3:** Each Defendants' deliberate indifference to Plaintiff's serious medical needs violated his due process rights under the Fourteenth Amendment.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[1]

**Count 1**

Plaintiff alleges that he suffered from knee pain, which was later diagnosed as a torn meniscus and broken patella. He also alleges that Defendants Dr. Coe and Collins failed to properly treat his pain from April until August 2016, when he was seen by Dr. Matticks and received a diagnosis. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Chatham v. Davis*, 839 F.3d

---

[1] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

679, 684 (7th Cir. 2016); *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (delay in treatment); *Greeno v. Daley*, 414 F.3d 645, 655 (7th Cir. 2005) (finding deliberate indifference where medical defendants persisted in a course of conservative treatment for eighteen months despite no improvement); *Kelley v. McGinnis*, 899 F.2d 612, 616 (7th Cir. 1990) (deliberate indifference when doctor continues with treatment knowing it to be ineffective). These allegations are sufficient to state a viable deliberate indifference claim against Defendants John Coe and Sherry Collins. Therefore, Count 1 will proceed against Defendants John Coe and Sherry Collins.

As to John Baldwin, Jamey Garrett, and Jane/John Doe grievance officer, Plaintiff alleges that he wrote grievances about the medical care he was receiving for his knee, but they denied the grievances. He further alleges that these defendants failed to intervene in his care and to remedy the failure by Collins and Dr. Coe to provide him with an x-ray and MRI. While a prison official may be subject to liability if he or she "knows about unconstitutional conduct and facilitates, approves, condones, or 'turn[s] a blind eye' to it", *Perez v. Fenoglio*, 792 F.3d 768, 781 (7th Cir. 2015) (citing *Vance v. Peters*, 97 F.3d 987, 992-93 (7th Cir. 1996)), the denial or mishandling of a grievance, standing alone, does not amount to a constitutional violation. *See, e.g., Owens v. Evans*, 878 F.3d 559, 563 (7th Cir. 2017) ("Prison officials who simply processed or reviewed inmate grievances lack personal involvement in the conduct forming the basis of the grievance."); *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation."). Additionally, grievance officials, as non-medical defendants, are entitled to reasonably rely on the expertise of medical professionals. *See Thornton v. Godinez*, 720 F. App'x 762, 764 (7th Cir. 2017). *See also Figgs v. Dawson,* 829 F.3d 895, 903-04 (7th Cir. 2016) (no deliberate indifference where prison administrative staff reasonably deferred to expertise of specialized staff); *Johnson v. Doughty,* 433 F.3d 1001, 1011

(7th Cir. 2006) (same); *Greeno v. Daley,* 414 F.3d 645, 656 (7th Cir. 2005) (same); *Giles v. Godinez*, 914 F.3d 1040, 1049-50 (7th Cir. 2019) (grievance officials reasonably relied on judgment of medical officials) (citing *Hayes v. Snyder*, 546 F.3d 516, 527–28 (7th Cir. 2008)).

Here, Plaintiff alleges only that officials denied his grievances and in doing so relied on the care that Dr. Coe was providing, which they are allowed to do as non-medical officials. They were not involved in the alleged underlying constitutional violation nor are there allegations that they turned a blind eye or condoned Dr. Coe and Collins' actions. As such, Plaintiff has failed to state a deliberate indifference claim against these defendants. Accordingly, Plaintiff's claims in Count 1 against John Baldwin, Jamey Garrett, and Jane/John Doe grievance officer will be **DISMISSED without prejudice** for failure to state a claim.

With respect to Defendant Stephen Dunkin, in addition to writing grievances, Plaintiff spoke with Dunkin on at least two occasions. He specifically complained about Dr. Coe's treatment to Dunkin, including Dr. Coe's failure to provide Plaintiff with a knee sleeve. (Doc. 1, p. 24). Plaintiff alleges that Dunkin promised him he would talk to Dr. Coe and make a request for Plaintiff to be seen by an outside specialist, but failed to do so. (*Id*. at p. 25). These allegations are sufficient to state a colorable deliberate indifference claim. Thus, Count 1 will also proceed against Defendant Stephen Dunkin.

## Count 2

A corporation can be held liable for deliberate indifference if it had a policy or practice that caused the alleged violation of a constitutional right. *Woodward v. Corr. Med. Serv. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004). Plaintiff has alleged that Wexford maintains a policy to cut costs by not providing care. This is sufficient to state a claim against Wexford at this early stage,

and Plaintiff's deliberate indifference claim against Wexford based upon its alleged policy will be allowed to proceed.

To the extent that Plaintiff alleges that Wexford is liable for the acts of its employees, the Court notes that a defendant must be "personally responsible for the deprivation of a constitutional right." *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (*quoting Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001)). In other words, Section 1983 does not authorize *respondeat superior* or "supervisory liability." *Vinning-El v. Evans*, 657 F.3d 591, 592 (7th Cir. 2011) (*citing Ashcroft v. Iqbal,* 556 U.S. 662 (2009)). Therefore, Plaintiff fails to state a claim against Wexford based upon supervisory liability.

Additionally, as to Defendant John Baldwin, Plaintiff merely alleges in conclusory fashion that Baldwin was aware of Wexford's allegedly unconstitutional policy but turned a blind eye to it. He alleges that Baldwin was aware of the policy because he is IDOC Director, but does not allege any personal involvement in making or implementing the policy. As such, Plaintiff fails to state a claim against Defendant John Baldwin and the claim against him in Count 2 will be **DISMISSED without prejudice**.

### Count 3

Plaintiff also seeks to bring a due process claim for the treatment provided by Collins and Dr. Coe pursuant to Wexford policies, and the failure of Jane/John Doe, Dunkin, Baldwin, and Garrett to provide him with care after receiving grievances. Plaintiff is attempting to attach an additional constitutional label to a single claim. But the Court analyzes similar claims under the most "explicit source[s] of constitutional protection." *Graham v. Connor,* 490 U.S. 386, 395 (1989); e.g., *Conyers v. Abitz,* 416 F.3d 580, 586 (7th Cir.2005) (recognizing that a claim "gains nothing by attracting additional constitutional labels"). Although the Due Process Clause of the

7

Fifth Amendment is applicable to medical care claims during the time between arrest and conviction, the Eighth Amendment applies to medical care claims of convicted inmates like Plaintiff. *See Sides v. City of Champaign,* 496 F.3d 820, 828 (7th Cir.2007). Thus, Plaintiff's Eighth Amendment claims properly present his medical care issues. As to Plaintiff's allegation that Defendants violated his due process rights by denying his grievances, failure to remedy an issue presented by a grievance or failure to respond to the grievance does not implicate an interest protected by the Due Process Clause. *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). Count 3 will therefore be **DISMISSED with prejudice**.

## Motion for Counsel

In his Motion for Counsel (Doc. 3), Plaintiff claims that his imprisonment will limit his ability to litigate his case and that he has limited access to the law library. He includes several letters from counsel declining to take his case. Given the early stage of the litigation, however, it is difficult to accurately evaluate the need for assistance of counsel. *See Kadamovas v. Stevens*, 706 F.3d 843, 845 (7th Cir. 2013) ("[U]ntil the defendants respond to the complaint, the plaintiff's need for assistance of counsel ... cannot be gauged.").[2] Therefore, Plaintiff's Motion for Counsel (Doc. 3) is **DENIED** without prejudice. Plaintiff may renew his request for the recruitment of counsel at a later date.

## Disposition

**IT IS HEREBY ORDERED** that **Count 1** will proceed against John Coe, Sherry Collins, and Stephen Dunkin. However, the Court **DISMISSES without prejudice** John Baldwin, Jamey Garrett, and Jane/John Doe grievance officer for failure to state a claim upon which relief may be

---

[2] In evaluating the motion for counsel, the Court applies the factors discussed in *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007), and related authority.

granted. The Clerk is **DIRECTED** to terminate these defendants from the Court's Case Management/Electronic Case Filing ("CM/ECF") system.

**IT IS ALSO ORDERED** that **Count 2** will proceed against Wexford Health Source but it is **DISMISSED without prejudice** as to John Baldwin.

**IT IS ALSO ORDERED** that **Count 3** is **DISMISSED with prejudice**.

**IT IS ORDERED** that the Clerk of Court shall prepare for Defendant John Coe, Sherry Collins, Stephen Dunkin, and Wexford Health Source: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each defendant's place of employment as identified by Plaintiff. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that, if a defendant can no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with defendant's current work address, or, if not known, defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

The Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. Section 1997e(g).

**IT IS FURTHER ORDERED** that if judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**

**DATED: 3/19/2019**

*Staci M. Yandle*
**United States District Judge**

### Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures.

Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**